UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JULIA A., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:23-cv-1077 (MPS) |
| | : | |
| KILOLO KIJAKAZI, | : | |
| | : | |
| *Defendant*. | : | |

## RECOMMENDED RULING

Plaintiff brings this administrative appeal from the decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits and supplemental security income.  For the reasons below, the undersigned recommends that plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 17, be DENIED, and the Commissioner's Motion to Affirm, ECF 20, be GRANTED.

### A.  LEGAL STANDARDS

#### 1.  Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be eligible for Title II disability insurance benefits, the claimant must establish the onset of disability during the period in which he or she was insured based on quarters of qualifying work. 42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  Alternatively, Title XVI provides for supplemental security income benefits to claimants who are indigent and disabled, without reference to prior work.  *See* 42 U.S.C. § 1381 *et seq.*

### 2. Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. §§ 404.1520, 416.920. (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities. (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months.[1]  If so, the claimant is disabled. (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his or her past work.[2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

---

[1] *See* 20 C.F.R. §§ 404.1509, 416.909 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

The Commissioner's authority to make these findings and decisions is delegated to an administrative law judge ("ALJ").  *See* 20 C.F.R. §§ 404.929, 416.1429.  A claimant may request review of an ALJ's decision by the Appeals Council.  *See* 20 C.F.R. §§ 404.967, 416.1467.  If the Appeals Council declines review or affirms the ALJ's decision, the claimant may appeal to the United States District Court.  42 U.S.C. §§ 405(g), 1383(c)(3).

### 3.  Court's review on appeal

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record.  *See* 42 U.S.C. § 405(g).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

## B.  BACKGROUND

### 1.  Procedural History

In October 2019, plaintiff filed an application for Title II disability insurance benefits ("DIB") alleging a disability onset date of January 1, 2017.  R. 279-80.  On October 24, 2019, she also filed an application for Title XIV supplemental security income ("SSI").  R. 281-92. The claims were denied at the initial review and reconsideration levels, and plaintiff requested a hearing.  R. 98-131, 132-157.  On February 24, 2022, ALJ Matthew Kuperstein conducted a telephonic hearing at which plaintiff and a vocational expert testified.  R. 53-97.  On June 2, 2022, the ALJ issued a written decision denying plaintiff's claims.  R. 17-43.  The decision contains two separate determinations due to differing eligibility windows: for the DIB

application, the ALJ examined whether plaintiff was disabled between the alleged onset date of January 1, 2017 and her date last insured of September 30, 2017, R. 27, and for the SSI application, he examined the period from the application date of October 24, 2019 to the date of the June 2022 decision, R. 32. Plaintiff's request for review was denied by the Appeals Council. R. 1-6. Plaintiff filed this action on August 11, 2023.

### 2. Work history

Plaintiff was 47 years old at the alleged disability onset date of January 1, 2017. She was educated through the eighth grade, and her past relevant work includes waitressing until early 2017. R. 71, 78.

### 3. List of impairments

In his June 2022 Decision, the ALJ found that plaintiff had the following severe impairments from the alleged onset date of January 1, 2017 to the date of decision: neurocognitive disorder, neurodevelopmental disorder, chronic obstructive pulmonary disease ("COPD"), asthma, and degenerative disc disease of the lumbar spine. The ALJ also found that anxiety disorder and depressive disorder were non-severe for the period from the alleged January 2017 onset date through the September 2017 date last insured but had become severe by the October 24, 2019 SSI application date. R. 22. The ALJ considered other complaints including low vision, learning disorder, and incontinence but found that these were not medically determinable. R. 24.

### 4. Overview of physical conditions

Plaintiff alleges that she became unable to work in January 2017 due to back pain. R. 68, 78. The record includes two prior medical visits from October and November 2016 at which she complained of left lower extremity pain. R. 484-85, 498-500. But between November 2016 and

4

April 2019, the only treatment was for a skin allergy in April 2017 and a dog bite in October 2018, R. 712.

In April 2019, plaintiff complained of sciatic back pain during an asthma appointment. R. 835. In September 2019 she reported increased urinary frequency and leakage of urine at night because of excessing coughing but no incontinence. R. 831. In October 2019 she was diagnosed with COPD secondary to cigarette smoking. R. 909-10. Also in October 2019, she was evaluated for chronic left-sided lumbar back pain and left gluteal pain, R. 509-511, and an x-ray showed multilevel degenerative disc disease with facet arthrosis but no significant spondylolisthesis, R. 511-12. At a related physical therapy ("PT") evaluation in December 2019 she reported stress and urge incontinence since the onset of back pain. R. 543.

Plaintiff reported COPD symptoms in March and April 2020. R. 531-32, 823.

In PT from January to April 2020, plaintiff made gains in range of motion and abatement of pain with exercise and attention to posture. R. 527-31. However, in May 2020, plaintiff requested imaging regarding her back pain. R. 574. A CT scan of her cervical spine in May 2020 showed degenerative changes including disc space narrowing, which was marked at C5-6. R. 839. A lumbar MRI in June 2020 showed severe left-sided neural foraminal narrowing at L5-S1 and moderate bilateral neural foraminal narrowing at L4-5; a broad-based disc bulge from L3-4 to L5-S1 with an annular fissure at L4-5; and mild stenosis at L3-4 and L4-5. R. 587.

In June and July 2020, plaintiff reiterated her complaints of back pain, and her orthopedist referred her for a potential epidural injection and prescribed a lumbar corset brace. R. 631-34. Plaintiff saw physiatrist David Gutierrez, M.D. a single time in November 2020 for back and right hip pain. A right hip x-ray was unremarkable. A straight leg raise and slump testing were positive but normal gait and 5/5 lower extremity motor strength were noted. Dr.

Gutierrez reviewed the prior MRI and assessed lumbar spondylosis and lumbar radiculopathy, and prescribed home exercise, a short-term course of tramadol, and an epidural injection.  R. 699-703.

In November 2020 plaintiff was seen for asthma and wheezing, and also complained of new right-sided sciatica for two weeks.  R. 779-80.  She visited physiatrist Aris Barbadimos, M.D. that month who assessed lumbar and sacroiliac pain and ordered bilateral sacroiliac and lumbar facet injections.  R. 766.  Dr. Barbadimos prescribed them again in June 2021, R. 857-58, but there are no follow-up visits in the record.

In March, May, and September 2021, plaintiff complained of shortness of breath and cough, with some incontinence resulting from coughing.  R. 844, 1014.

In December 2021, plaintiff visited physiatrist Mark Dundas, M.D.  Plaintiff was walking with a cane and complained of lumbar pain radiating to her buttock that worsened with prolonged standing and walking.  Symptoms were reproduced on exam but the diagnosis was inconclusive at that time based on the presentation and history.  Dr. Dundas noted that more frequent physical therapy than plaintiff's prior PT would likely be required to achieve symptom improvement, and he prescribed "conservative measures" including home exercise, Tylenol, and pain psychology, and potentially further injections.  R. 966-71.  Plaintiff canceled two follow-up appointments in January 2022.  R. 988-91.

**5.  Overview of mental conditions**

At an unrelated April 2017 medical visit, plaintiff had a positive screen for depression. R. 493.

In September and December 2020, plaintiff underwent psychological examinations as part of the disability determination process.  She met with psychologist Anthony Campagna,

6

Ph.D. in September 2020.  R. 650-54.  Based on plaintiff's reported history, the examiner's

observations, and testing measures, Dr. Campagna wrote that "claimant meets criteria for

neurocognitive disorders" citing impaired intermediate memory, impaired attention, diminished

capacity for planning and anticipation, response disinhibition, and disruption of visual-spatial

functioning.  R. 653.  Dr. Campagna opined that plaintiff had:

- mild difficulty retaining simple instruction but could understand them, carry them out, and make simple work-related decisions;

- moderate difficulty retaining complex instructions and moderate difficulty carrying them out if they require visual spatial organization;

- no impairment in persistence and pace; no impairment in her ability to respond appropriately to supervisors, coworkers, and the public; and

- moderate difficulty adapting to changes in the workplace; and mild difficulty managing workplace stress.

R. 653-54.  He opined that plaintiff was intellectually unable to manage her own funds.  R. 653.

In December 2020, plaintiff met via video with psychologist Julie Keen, Psy.D.  R. 800-

05.  Dr. Keen noted that plaintiff's had recently lost her daughter to cancer, and noted Dr.

Campagna's prior findings of borderline intellectual functioning and overall mild cognitive

delays.  R. 800-01.  Her clinical assessment was unspecified neurodevelopmental disorder

resulting in approximate borderline intellectual functioning with associated problems in learning

(reading, writing, and math); possible mild neurocognitive disorder based on history of

substantial cocaine use during adolescence/early adulthood and head injury in 2006; persistent

depressive disorder with anxious distress alongside current/appropriate grief episode; and history

of stimulant abuse (cocaine), in sustained remission.  R. 804-05.  Based on plaintiff's report,

observations, and testing, Dr. Keen found the following limitations:

| | |
|---|---|
| Understand and remember simple instructions | mildly impaired |
| Carry out simple instructions | mildly impaired |

| Make judgements on simple work-related decisions | mildly impaired |
|---|---|
| Understand and remember complex instructions | moderately impaired |
| Carry out complex instructions | moderately impaired |
| Make judgements on complex work-related decisions | markedly impaired |
| Interact appropriately with the public | mildly impaired |
| Interact appropriately with supervisor(s) | mildly impaired |
| Interact appropriately with co-workers | mildly impaired |
| Respond appropriately to usual work situations and changes in routine | mildly impaired |
| Maintain concentration, attention, and pace | moderately impaired |

Dr. Keen opined that plaintiff could manage her own funds, explicitly disagreeing with Dr. Campagna's recommendation.  R. 805.

Subsequently, plaintiff sought treatment for depression and anxiety with psychiatrist Pavle Joksovic, M.D. three times from June to August 2021 and once again in January 2022.  R. 918-22.  Dr. Joksovic diagnosed generalized anxiety disorder and major depressive disorder, and prescribed Lexapro.  R. 919.  In January 2022, Dr. Joksovic completed a mental capabilities assessment form and assessed *fair* ability to remember work-like procedures; understand and remember short/simple instructions and detailed instructions; maintain regular attendance; sustain an ordinary routine; complete a normal workday; perform at a consistent pace; get along with supervisors and co-workers; respond to changes in work setting; and deal with the stress of skilled or semi-skilled work.  R. 1005-06.  He assessed *poor* ability to deal with normal work stress and carry out detailed instructions.  R. 1006.  Like Dr. Keen, he concluded that plaintiff could manage her own benefits.  R. 1007.

### C. THE ALJ'S DECISION

In his June 2022 decision, the ALJ made separate determinations for the disability benefits application (alleged onset date of January 1, 2017 and date last insured September 30, 2017) and the SSI application (application date of October 24, 2019), but his conclusions were essentially the same.  After finding that plaintiff had the severe and non-severe impairments

8

described above and that the impairments did not meet or medically equal a listed impairment, R. 22-27, 30-32, the ALJ found that plaintiff had the residual capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) if further limited as follows:

> To lifting or carrying 20 pounds occasionally and 10 pounds frequently; To standing or walking with normal breaks for a total of six hours in an eight hour workday; To sitting with normal breaks for a total of six hours in an eight hour workday; To occasional climbing of ramps or stairs, climbing of ladders, ropes, or scaffolds, balancing, stooping, kneeling, crouching, or crawling; To needing to be able to avoid concentrated exposure to extreme cold, extreme heat, and atmospheric conditions such as fumes, odors, dusts, gases, or poor ventilation; To simple tasks that involve understanding and recalling only simple but not detailed instructions in a setting for two hour periods over the course of a typical workday and work week; and Further limitation to work that does not require adherence to a strict productivity schedule.

R. 27, 32-33. At Step 4, the ALJ found that the plaintiff was not capable of performing past relevant work but concluded at Step 5 based on VE testimony that there were jobs that plaintiff could perform. R. 41-43. The ALJ therefore concluded that plaintiff was not disabled under the Social Security regulations.

### D. DISCUSSION

Plaintiff raises four claims of error: (1) the ALJ's made incorrect credibility determinations regarding plaintiff's symptoms; (2) the ALJ assigned incorrect weight to medical opinions; (3) the ALJ did not adequately develop the record; and (4) the RFC determination is not supported by substantial evidence. None of these claims is availing.

#### 1. No factual error in credibility determination

Plaintiff's first claim of error is that the ALJ's findings on the severity of plaintiff's reported symptoms are not supported by substantial evidence. ECF 17-1 at 27-29. "Symptoms" means the claimant's "own description of [her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n). The regulations provide a two-step procedure for an ALJ to determine

"the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See* 20 C.F.R. §§ 404.1529 and 416.929; *see also* SSR 16-3p. First, the ALJ evaluates whether there is an underlying medically determinable impairment that could reasonably be expected to produce such a symptom – for example, pain – irrespective of its alleged severity. *Id.* Second, if objective evidence reveals an impairment that could cause the alleged symptoms, the ALJ evaluates their intensity and persistence and the extent to which they limit the ability to perform work-related activities. *Id.* The ALJ must "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions." *See* SSR 16-3p.

At the February 2022 hearing, plaintiff testified as follows. Concerning lumbar issues, she stopped waitressing in 2017 due to "unbearable" back pain. R. 69-70. Since then, her only work-like activities were dog-sitting four times and participating in media interviews to raise breast cancer awareness in memory of her daughter. R. 66-67. She can stand for half an hour, and the pain is unbearable after two hours. R. 70. She can only walk for ten minutes at a time. R. 70. She can only lift or carry "much less" than ten pounds. R. 73. She does light housework with her husband's help. R. 68-69. Plaintiff further testified that a doctor had prescribed a four-prong cane, and Dr. Dundas prescribed a shower chair. R. 77-78.

Concerning COPD and asthma, plaintiff testified that it is hard to go up and down stairs. R. 68. She is always coughing which results in urinary incontinence four or five times a day, and she sometimes wears diapers. R. 81-82.

Concerning cognitive ability, plaintiff testified that she was in special education in school and left school in the ninth grade. R. 76. During prior work she had a hard time with four- or

five-step instructions until she had practiced them a few times as well as difficulty with

concentration.  R. 75-76.  She has trouble reading and writing due to dysgraphia and is more

visual.  R. 77.  Nonetheless, she was pretty good at making decisions and has great common

sense.  R. 75-76.

On review of plaintiff's physical symptoms including pain, the ALJ concluded that

although her impairments could reasonably be expected to produce such symptoms, the record

was not entirely consistent with the alleged degree of severity.  R. 27-30, 33-35.  Plaintiff argues

that the only supporting evidence cited by the ALJ were misstatements or misinterpretations;

however, the only two alleged errors she identifies are the ALJ's findings that (a) that she is able

to manage finances and (b) that her media appearances to promote breast cancer awareness

suggest significant mental abilities, R. 28-29, both of which relate to cognitive symptoms.

Regarding the ALJ's conclusion that plaintiff could manage her own finances, both CE

Dr. Keen and psychiatrist Dr. Joksovic opined that she could do so, even though CE Dr.

Campagna disagreed (R. 653, 805, 1007), so this was not a misstatement as plaintiff claims.

However, the undersigned does agree that the ALJ overstated the import of plaintiff's media

appearances as a "spokesperson" for breast cancer awareness.  Because the record does not

describe the nature and extent of those appearance, it was too big of a leap for the ALJ to

conclude that these appearances "suggest significant mental abilities."  *See* R. 37.  Nonetheless,

that is at most harmless error given the existence of other substantial evidence to support the

ALJ's evaluation of plaintiff's reports of cognitive symptoms.  For instance, Dr. Keen concluded

that plaintiff had only mild impairments in understanding, remembering and carrying out simple

instructions, making judgments on simple work-related decisions, interacting with co-workers,

supervisors and the public and in responding to usual work situations and changes in routing and

that she was only moderately impaired in carrying out complex instructions and maintaining concentration, attention and pace.  Likewise, Dr. Joksovic opined that plaintiff had a fair ability to remember work-like procedures, understand and remember short/simple instructions, interact with others, sustain an ordinary routine, maintain regular attendance, perform at a consistent pace and complete a normal workday.   And not only were the ALJ's conclusions regarding mental ability generally consistent with the opinions of two CE psychologists and psychiatrist Dr. Joksovic, but they were also consistent with plaintiff's own report of her cognitive abilities as described above.

Likewise, the ALJ's symptom evaluation relating to back pain and COPD is supported by substantial evidence.  As plaintiff notes in her brief, the ALJ acknowledged that x-ray and MRI imaging showed some spinal narrowing (R. 587, 829), that plaintiff was diagnosed with COPD in October 2019 based on a study showing moderate airflow obstruction (R. 910), and that plaintiff used a cane at one physiatry appointment (R. 969).  R. 34-35.  However, the ALJ correctly observed that there is only one instance of cane usage in the medical records (*see* R. 969) and there is no prescription for an assistive device in the medical record.  R. 35.  Overall, the ALJ's symptom evaluations for both periods included ample citation and discussion of medical records that constitute substantial evidence in support his conclusion that plaintiff's symptoms were not as limiting as she alleged.  R. 27-30, 33-37.  For all these reasons, plaintiff has not identified a reversible factual error in the ALJ's symptom evaluation.

### 2.  Weight of medical opinions

Plaintiff's second claim of error is that the ALJ's assigned incorrect weights to medical opinions.  ECF 17-1 at 31-34.  The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s)."  20 C.F.R. §

12

404.1513(a)(2).  When weighing the persuasiveness of medical opinions in the record, the

regulations require the ALJ to consider five factors: supportability, consistency, the medical

source's relationship with the claimant, the length of the treatment relationship, the source's area

of specialty, and any "other factors that tend to support or contradict a medical opinion."  *Id.* §

404.1520c(c). [3]

     **a.  CE opinions**

     Regarding the opinions of the psychologist CEs, Drs. Campagna and Keen, plaintiff

accuses the ALJ of "deciding that he knows better than trained medical professionals."  ECF 17-

1 at 32.  However, she does not identify any way in which the ALJ's RFC determination is at

odds with their opinions – in fact, they are generally consistent.  Regarding Dr. Campagna's

opinion, the ALJ rejected Dr. Campagna's assertion that plaintiff met criteria for neurocognitive

disorders because Dr. Campagna only assessed one marked limitation, which is insufficient to

establish a listed impairment.  R. 38; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02

(requiring extreme limitation of one, or marked limitation of two, areas of mental functioning).

Otherwise, the ALJ's RFC determination accounts for the cognitive limitations opined by Dr.

Campagna.  As for Dr. Keen's opinion, the ALJ disagreed that plaintiff had marked impairment

in dealing with complex work tasks and moderate impairment in maintaining concentration,

attention, and pace.  R. 38.  Nonetheless, the ALJ's ultimate RFC determination limited plaintiff

"[t]o simple tasks that involve understanding and recalling only simple but not detailed

---

[3] To the extent that plaintiff is challenging the manner in which the ALJ analyzed the opinion
evidence – as opposed to the ALJ's conclusions as to weight – there likewise is no error.  The
ALJ examined both the evidence cited in the opinions (supportability, 20 C.F.R. §
404.1520c(c)(1)) and the consistency between the opinion and the entire record (consistency, §
404.1520c(c)(2)), and he explained his analysis of those factors as required (§ 404.1520c(b)(2)).
*See* ALJ Decision, R. 37-41.

instructions in a setting for two hour periods over the course of a typical workday and work

week; and . . . to work that does not require adherence to a strict productivity schedule." R. 27,

32-33. Plaintiff does not point to any inconsistency between this RFC determination and the

CEs' opinions as to plaintiff's cognitive abilities, regardless of the minor critiques that the ALJ

made of their opinions.

### b. Psychiatrist opinion

Next, plaintiff's brief block quotes the ALJ's analysis of the opinion of treating

psychiatrist Dr. Joksovic but does not actually allege any error in that analysis. ECF 17-1 at 32.

Because plaintiff raises no claim of error concerning Dr. Joksovic's opinion, the Court need not

examine it any further. *Cf. Stanton v. Astrue*, 370 F. App'x 231, 233 (2d Cir. 2010) (claim not

raised in argument to district court is not preserved).

### c. State agency reviewers

As for the opinions of state agency reviewers relating to plaintiff's physical limitations,

there is no genuine allegation of error. Plaintiff's brief focuses on the fact that the agency

reviewers included a limitation for avoidance of extreme temperatures for the period from

January to September 2017 but did not include a corresponding limitation for the period

beginning October 2019. *See* Pl. Br., ECF 17-1 at 32-33; ALJ Decision, R. 40-41. To correct

that ostensibly inadvertent omission, the ALJ added that limitation back into the RFC

determination. R. 41. Insofar as the ALJ's handling of this issue was more favorable to plaintiff

than the opinions themselves, it is not grounds for reversal. *See, e.g.*, *Singh v. Comm'r of Soc.

Sec.*, No. 21-cv-1160 (BMC), 2022 WL 22823556, at *3 (E.D.N.Y. May 26, 2022) (affirming

where ALJ placed more restrictions on plaintiff's movements than medical opinion

recommended, such that any error was in plaintiff's favor). Nor would this minor inconsistency

justify rejecting medical opinions in their entirety. *See, e.g., Caciopoli v. Colvin*, No. 3:16-cv-949 (JAM), 2017 WL 3269075, at *5 (D. Conn. Aug. 1, 2017).

As for the opinions of agency reviewers relating to plaintiff's mental limitations, plaintiff's sole critique is that the ALJ did not adopt the phrasing from the initial agency reviewer stating that plaintiff could perform "simple work of 1-2 elements." *See* Pl. Br., ECF 17-1 at 33 (citing R. 126). However, the ALJ provided reasons for not adopting that phrasing verbatim with supporting citations to the record. *See* R. 40. Moreover, the agency reviewer herself used that language not as a standalone restriction but, rather, in explanation of her opinion that plaintiff had moderately limited ability to understand and remember detailed instructions. R. 126. The ALJ's RFC determination is generally consistent with that opinion in that it limits plaintiff "[t]o simple tasks that involve understanding and recalling only simple but not detailed instructions in a setting for two hour periods over the course of a typical workday and work week," R. 27, 33, so the claim of error is academic at best.

### 3. ALJ adequately developed the record

Plaintiff's third claim of error is that the ALJ did not adequately develop the record. It is well established that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (cleaned up); 20 C.F.R. § 404.1512(b)(1) (agency must develop "complete medical history" from at least 12 months prior to application). The reverse is also true: the ALJ is not obligated to seek additional information "where there are no obvious gaps in the administrative record." *Rosa* at 79 n.5.

Plaintiff argues that because the ALJ partially disagreed with the medical opinions of record, he should have obtained additional medical opinions from treating sources. *See* ECF 17-

1 at 33-34 (citing, *inter alia*, *Kurlan v. Berryhill*, 3:18-cv-062 (MPS), 2019 WL 978817 at *3 (D.

Conn. Feb. 28, 2019) (where ALJ "gave little to no weight to all of the medical opinions" he

"had a duty to develop the record and obtain relevant medical opinions before making the RFC

assessment")).  However, a partial rejection of the medical opinions of record does not

necessarily create an obvious gap.  *See*, *e.g.*, *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir.

2013) (even where record contained no opinion from treating source and ALJ partially rejected

CE's findings, there was no obvious gap because CE's report "largely supported the ALJ's

assessment of [the claimant's] residual functional capacity"); *see also Staggers v. Colvin*, No.

3:14-cv-717 (JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015) (ALJ need not seek

additional RFC opinions "where the record is clear and, typically, where there is *some* useful

assessment of the claimant's limitations from a medical source") (citing *Tankisi v. Comm'r of

Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (medical opinion specifically matching ALJ's

RFC determination not required where record contains "sufficient evidence" from which ALJ

can assess RFC)).  Here, because the ALJ's RFC determination is generally consistent with the

medical opinions by the CEs, the agency reviewers, and plaintiff's psychiatrist, as described

above, the ALJ's partial divergences did not create an obvious gap in the record.

   Plaintiff also contends that the record lacks sufficient treatment records prior to the

January to September 2017 DIB evaluation period.  ECF 17-1 at 30.  Although the record

includes only two medical encounters in 2016 and one in 2017, plaintiff does not point to any

missing treatment records.  On similar facts, the Second Circuit rejected a claim that the ALJ

failed to develop the record where the claimant "has not identified any missing medical records

that should have been included in the record, and we are aware of none."  *Schillo v. Kijakazi*, 31

F.4th 64, 76 (2d Cir. 2022); *see also*, *e.g.*, *Crespo v. Comm'r of Soc. Sec.*, No. 3:18-cv-435

(JAM), 2019 WL 4686763, at *5 (D. Conn. Sept. 25, 2019) (plaintiff's motion did not indicate whether she actually had additional treatment notes during relevant period); *Butler v. Comm'r of Soc. Sec.*, No. 18-cv-5293 (PGG)(SN), 2019 WL 4545639, at *6 (S.D.N.Y. Aug. 14, 2019) (no error where plaintiff "has not identified any sources that the ALJ failed to explore").

Plaintiff next contends that there are missing records from physiatrist Dr. Dundas. ECF 17-1 at 30. However, the record does not support that contention. After her first visit in December 2021, R. 966-71, plaintiff canceled two follow-up appointments in January 2022. R. 988-91. In March 2022, plaintiff's counsel faxed the ALJ stating that he had requested more records from Dr. Dundas's practice and would "submit [them] to SSA if obtained." R. 1073. But there is no indication that plaintiff either visited again with Dr. Dundas or sent any further records while the hearing record was open.

Additionally, plaintiff asserts that chiropractic treatment notes are missing. ECF 17-1 at 30. While this is ostensibly true, she has failed to establish the materiality of those notes. The record includes only tangential references to chiropractic treatment: in plaintiff's testimony (R. 68); at an orthopedic appointment in October 2019 (R. 509, "The patient has attempted chiropractic manipulation without significant relief"); at a physical therapy intake in March 2020 (R. 526, "she has seen chiropractor about once every other month - was gifted 7 visits. Has two more sessions to be scheduled prn"); and at the visit with Dr. Dundas in December 2021 (R. 967, "She has tried chiropractic care, does not report specific level of improvement"). Plaintiff does not identify the chiropractor in her brief or describe the significance of this treatment, nor did her counsel mention the chiropractor in his five-day letter (R. 443) or at the hearing when the ALJ asked whether there were any missing records (R. 60-61). Plaintiff's failure to take opportunities to identify or fill the alleged gap at the hearing level, while not dispositive, militates against

plaintiff's assertion that the gap was obvious. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) (record was adequate where ALJ requested any additional evidence prehearing, held record open post-hearing, contacted counsel when none was received, and granted extension of time to supplement); *John C. v. Kijakazi*, No. 3:22-cv-1073 (SVN), 2023 WL 6210994, at *6 (D. Conn. Sept. 25, 2023) (record was adequate where ALJ held record open for two weeks post-hearing and allegedly missing records did not appear to be significant). More importantly, plaintiff has provided no basis to believe that the chiropractic notes would provide any material insight that is not cumulative of other record evidence, so their absence is not grounds for reversal. *See Jennifer Lynn E. v. Kijakazi*, No. 3:20-cv-695 (TOF), 2021 WL 4472702, at *6 (D. Conn. Sept. 30, 2021) (plaintiff bears burden of showing that missing records would undermine ALJ's conclusions) (citing *Santiago v. Astrue*, No. 3:10-cv-937 (CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011)); *see also See Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) (contrasting missing records of a "serious and critical event" that could "materially change the weight of the evidence" with "routine" check-up and progress notes of which there was "no indication that they contain significant information"). For all these reasons, plaintiff has not identified a reversible legal error concerning the ALJ's development of the record.

### 4.  Substantial evidence supports RFC determination

Plaintiff's final claim of error is that that ALJ's RFC determination should have included greater limitations. Regarding back pain, her brief cites imaging showing degenerative changes in her cervical and lumbar spines; reports of pain to treatment providers; reduced range of motion on examination; and reported inefficacy of medications. ECF 17-1 at 36. Regarding COPD and asthma, she cites a pulmonary function test; wheezing and shortness of breath at

medical visits; self-reported incontinence due to coughing; and difficulty doing PT for her back due to COPD complications. *Id.* at 36-37. Regarding non-exertional limitations, plaintiff cites cognitive impairments as found by two consultative examiners. *Id.* at 37. However, even where there is some evidence to support the plaintiff's position, the Court must sustain the ALJ's factual findings if they are supported by substantial evidence. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). In other words, the court can reject ALJ's factual findings "only if a reasonable factfinder would have to conclude otherwise." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022).

Here, the RFC determination accounts for the evidence cited in plaintiff's brief by limiting her to unskilled light work with some additional limitations, including limitations relating to breathing (no temperature extremes, fumes, or poor ventilation) and cognitive issues (simple tasks with no strict productivity schedule). *See* R. 27, 32-33. Substantial evidence supports the ALJ's decision not to find greater limitations. Notably, regarding her primary complaint of back pain, plaintiff's pursuit of treatment was inconsistent and lacked follow-through. Plaintiff had a series of short-term relationships with an orthopedist (Dr. Varthi) and three physiatrists (Drs. Gutierrez, Barbadimos, and Dundas). The consensus suggestions were home exercise and epidurals, but there is no indication that plaintiff pursued either course diligently. *See* R. 631-34 (in July 2020, Dr. Varthi referred for potential epidural and prescribed lumbar corset brace); R. 699-703 (at the sole visit in November 2020, Dr. Gutierrez prescribed home exercise, a short-term course of tramadol, and epidural injection); R. 766, 857-58 (at two visits in November 2020 and June 2021, Dr. Barbadimos apparently did perform bilateral sacroiliac and lumbar facet injections); R. 966-71 (single visit in December 2021 with Dr.

Dundas, who noted that more frequent physical therapy would likely be required to achieve symptom improvement  and prescribing "conservative measures" including home exercise, Tylenol, and pain psychology, and potentially further injections).  The assessments and treatment plans of these providers – and of other sources who treated plaintiff for COPD/asthma and conducted cognitive testing – provide substantial support for the ALJ's conclusions as to her residual functional capacity.  Having reviewed the medical record and the ALJ's analysis thereof, the undersigned finds that the RFC determination is plainly supported by substantial evidence.

Lastly, plaintiff asserts that if she were limited to sedentary work, the Medical-Vocational Guidelines ("Grids") would dictate a finding of disability due to her age and education.  ECF 17-1 at 37 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 §201.09).  However, the ALJ found that plaintiff was capable of more than sedentary work and she has failed to establish that this conclusion was in error, so the premise of the Grids argument is flawed.

### E.  CONCLUSION

For the foregoing reasons, the undersigned finds no reversible error and recommends that plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 17, be DENIED, and the Commissioner's Motion to Affirm, ECF 20, be GRANTED.

Any party may seek the district court's review of this recommended ruling.  *See* Fed. R. Civ. P. 72(b)(2) (written objections to proposed findings and recommendations must be filed objections to recommended ruling due fourteen days after being served).  Failure to file timely objections will preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 and 6(a); D. Conn. L. Civ. R. 72.2; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per

curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED, this 1st day of July, 2024, at Bridgeport, Connecticut.


*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge